**Appeal No. 19-4169**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JAMES B. WICKER,

*Plaintiff-Appellant*,

v.

BAYVIEW LOAN SERVICING, LLC and U.S. BANK, N.A.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the District of Utah, Central Division
Honorable David Nuffer, Case No.:  4:19-cv-00088-DN

---

## APPELLEES' RESPONSE BRIEF

## (ORAL ARGUMENT NOT REQUESTED)

---

Robert H. Scott
Alan M. Hurst
AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
Telephone:  (801) 907-6900
Facsimile:  (801) 355-0294
Email:  robert.scott@akerman.com
Email:  alan.hurst@akerman.com

*Counsel for Defendants-Appellees Bayview
Loan Servicing, LLC and U.S. Bank, N.A.*

# CERTIFICATE OF INTERESTED PARTIES

The following parties in this appeal have some interest in or a relationship with the litigation or the outcome of the litigation.

1.     Bayview Loan Servicing LLC (**Bayview**) is a Delaware limited liability company and is wholly owned by Bayview Asset Management LLC, another Delaware limited liability company.  No publicly held company owns 10% or more of Bayview's stock.

2.     U.S. Bank N.A. (**U.S. Bank**) is a wholly-owned subsidiary of U.S. Bancorp, which trades on the New York Stock Exchange as USB.  No publicly held corporation holds 10% or more of U.S. Bancorp's stock.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PARTIES ..................................................... i

TABLE OF CONTENTS................................................................................... ii

STATEMENT OF RELATED CASES .............................................................. vii

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................2

I.    Factual Background ..................................................................................2

      A.    Unsigned "arbitration agreement" ..................................................2

      B.    "Arbitration" ...................................................................................4

II.   Procedural History ...................................................................................6

STANDARD OF REVIEW .................................................................................8

SUMMARY OF THE ARGUMENT ...................................................................8

ARGUMENT .......................................................................................................9

I.    Evidentiary Issues....................................................................................9

      A.    The award's factual statements are inadmissible.................................12

II.   The District Court Did Not Have to Confirm a Bogus Award.....................13

      A.    Mr. Wicker has not satisfied 9 U.S.C. § 9's requirements. .................14

            1.    There can be no arbitration without an agreement. ..................15

            2.    No arbitration occurred. .........................................................16

            3.    The FAA does not provide for arbitration by default. ..............17

      B.    The parties did not agree to confirmation. ...........................................19

51938634;1

**C.**   The district court could consider whether there was an agreement. ...............................................................................20

**D.**   There was no agreement................................................................23

**E.**   Mr. Wicker's precedents do not apply...........................................24

    1.   Supreme Court authority...................................................25

    2.   Tenth Circuit authority......................................................27

    3.   Persuasive authority .........................................................28

**III.**   The District Court Could Rule without an Order to Show Cause ................29

    **A.**   Mr. Wicker was not prejudiced. .......................................................30

**IV.**   CONCLUSION...........................................................................31

CERTIFICATE OF SERVICE ...................................................................34

CERTIFICATE OF COMPLIANCE...........................................................35

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS 36

EXHIBITS...................................................................................................37

EXHIBIT 1 – Order Denying Motion for Service of Process And Granting SUA Sponte Motion To Dismiss Action For Failure To State A Claim………………..38

EXHIBIT 2 – Judgment In A Civil Case…………………………………….…42

EXHIBIT 3 – Order Denying Motion For Reconsideration………………....…44

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arriaya-Flores v. Holder,*
497 F. App'x 859 (10th Cir. 2012) (unpublished) ..............................13

*Borg Inc. v. Morris Middle Sch. Dist. No. 54,*
278 N.E.2d 818 (1972) (Ill. Ct. App. 1972) ......................................28

*Brown v. Coleman Co.,*
220 F.3d 1180, 1182–84 (10th Cir. 2000) ...................................27, 28

*Buckeye Check Cashing Inc. v. Cardegna,*
546 U.S. 440 (2006)............................................................23

*Cal Wadsworth Const. v. City of St. George,*
898 P.2d 1372 (Utah 1995)...................................................24

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors LLC,*
816 F.3d 1208 (9th Cir. 2016) ..............................................21

*Chastain v. Robinson-Humphrey Co.,*
857 F.2d 851 (11th Cir. 1992), *overruled on other grounds by Larsen v.
Citibank FSB,* 871 F.3d 1295 (11th Cir. 2017) .................................23

*In re Cox Enters. Inc. Set-top Cable Television Box Antitrust Litig.,*
835 F.3d 1195 (10th Cir. 2016) .............................................23

*Denver & Rio Grande Western v. Union Pacific,*
119 F.3d 847, 849–50 (10th Cir. 1997) ...........................................27

*First Options of Chicago Inc. v. Kaplan,*
514 U.S. 938 (1995).......................................................21, 27

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
561 U.S. 287 (2010)...............................................15, 16, 21, 22, 23

*Hall Street Associates L.L.C. v. Mattel Inc.,*
552 U.S. 576 (2008)........................................................26, 27

*Henry Schein Inc. v. Archer and White Sales Inc.,*
139 Sup. Ct. 524, 527–28 (2019)..............................................25, 26

iv

*Howell v. N.M. Dep't of Aging & Long Term Services*,
  398 F. App'x 355 (10th Cir. 2010) (unpublished) .............................................13

*Hwang v. Tyler*,
  625 N.D.2d 243, 244 (Ill. Ct. App. 1993)...........................................................28

*IFC Interconsult AG v. Safeguard Int'l Partners*,
  438 F.3d 298 (3d Cir. 2006) ...............................................................................10

*Janiga v. Questar Capital Corp.*,
  615 F.3d 735 (7th Cir. 2010) ..............................................................................22

*Jones v. Bowers*,
  737 F. App'x 846 (10th Cir. 2018) (unpublished) ................................................7

*Local 149, Boot & Shoe Workers Union, AFL-CIO v. Faith Shoe Co.*,
  201 F. Supp. 234 (M.D. Pa. 1962).......................................................................18

*Meekins v. Lakeview Loan Servicing LLC*,
  2019 WL 7340300 ...............................................................................................20

*Northeast Reg'l Council of Carpenters v. KRS Constr. Grp. LLC*,
  No. 15-0047 (FLW)(LHG), 2015 WL 4773367 (D.N.J. Aug. 13, 2015)...........18

*O.R. Sec. Inc. v. Prof. Planning Assocs.*,
  857 F.2d 742 (11th Cir. 1988) ............................................................................10

*Orman v. Cent. Loan Admin. & Reporting*,
  No. CV-19-04756, 2019 WL 6841741 (D. Ariz. Dec. 16, 2019)
  (unpublished) .......................................................................................................17

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010).........................................................................................20, 21

*SBRMCOA LLC v. Bayside Resort Inc.*,
  707 F.3d 267 (3d Cir. 2013) ...............................................................................22

*Spahr v. Secco*,
  330 F.3d 1266 (10th Cir. 2003) .....................................................................22, 23

*Spaw-Glass Const. Serv. Inc. v. Vista De Santa Fe Inc.*,
  844 P.2d 807 (N.M. 1992) ...................................................................................28

v

*Stebbins v. Google Inc.*,
  No. 11-cv-03876, 2011 WL 5150879 (N.D. Cal. Oct. 27, 2011)
  (unpublished) ......................................................................................15, 19

*Sterling Colorado Beef Co. v. United Food and Commercial Workers*,
  767 F.2d 718, 721 (10th Cir. 1985) ....................................................28

*Swanson v. Wilford, Geske & Cook*,
  No. 19-cv-117, 2019 WL 4575826 (D. Minn. Aug. 30, 2019)
  (unpublished) ......................................................................................17

*THI of New Mexico at Vida Encantada LLC v. Lovato*,
  864 F.3d 1080 (10th Cir. 2017) ....................................................8, 17

*Toyota of Berkeley v. Auto. Salesman's Union, Local 1095*,
  834 F.2d 751 (9th Cir. 1987) ...............................................................18

*United Paperworkers Int'l Union v. Misco Inc.*
  484 U.S. 29, 34 (1987)..........................................................................25

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960)........................................................................15, 16

*Val-U Constr. Co. v. Rosebud Sioux Tribe*,
  146 F.3d 573 (8th Cir. 1998) .......................................................18, 19

*Verdi Energy Grp. v. Nelson*,
  2014 UT App 101 ..................................................................................24

**Statutes**

9 U.S.C. § 4 .................................................................................................17

9 U.S.C. § 6 .............................................................................................9, 30

9 U.S.C. § 9................................................... 1, 6, 8, 14, 17, 19, 20, 26, 27, 29, 32

9 U.S.C. § 10.........................................................................................8, 14

9 U.S.C. § 13 ...............................................................................................19

12 U.S.C. § 1291 ...........................................................................................1

UNIFORM ARBITRATION ACT § 12(a)(5) .................................................28

51938634;1

**Rules**

FED. R. CIV. P. 59 ................................................................1, 31

FED. R. EVID. 602 ..................................................................11

FED. R. EVID. 801(c)..............................................................13

FED. R. EVID. 802 ..................................................................13

FED. R. EVID. 1101 ................................................................10

**Other Authorities**

28 C.F.R. § 68.10 ..............................................................29, 30

BLACK'S LAW DICTIONARY, "Arbitration" ............................15

## STATEMENT OF RELATED CASES

Counsel are unaware of any related or prior appeals.

## JURISDICTIONAL STATEMENT

Plaintiff James Wicker filed an application for confirmation of an arbitration award (R004),[1] so the district court had jurisdiction under 9 U.S.C. § 9.

The district court entered final judgment against Mr. Wicker (R095), so this Court has jurisdiction under 12 U.S.C. § 1291.

The judgment was entered on November 13, 2019.  (R095.)  On November 20, Mr. Wicker moved under Federal Rule of Civil Procedure 59 to amend the judgment.  His motion was decided on December 5, 2019, and he filed his notice of appeal the next day. (R132, R133.)

The district court's judgment disposed of all claims against all parties.

---

[1]  Citations in the format of R### cite the record at page ###.

## STATEMENT OF THE ISSUES

1.    The appellees never signed an arbitration agreement and never arbitrated.  Was the district court required to confirm an award it described as an "obvious sham" simply because the appellees did not move to vacate?  (R094.)

2.    Was the district court required to issue an order to show cause before denying a motion it ruled was a "farce"?  (R093.)

## STATEMENT OF THE CASE

### I.    Factual Background

### A. Unsigned "arbitration agreement"

Mr. Wicker claims he is "party to an arbitration agreement with Bayview Loan Servicing LLC and US Bank, NA dated April 5th 2019."  (R017.)  Mr. Wicker appended a copy of the agreement[2] to his application.  (R058–R069.)  It is titled "SHOW OF CAUSE PROOF OF CLAIM DEMAND," and it is not signed by Bayview or U.S. Bank.  (R058, R069.)  It doesn't even have signature lines for Bayview or U.S. Bank; it has a single signature line with the words "YOUR NAME a Natural Man" and "James B. Wicker" beneath.  (R069.)

The "demand" explains its terms in eleven mostly single-spaced pages of small type, interspersed with observations about the unconstitutionality of fiat

---

[2]  Bayview and U.S. Bank may use the words "agreement," "arbitration," "hearing," and "arbitrator" for convenience, but they consistently mean "supposed agreement," "supposed arbitration," "supposed hearing," and "supposed arbitrator."

currency, the bankruptcy of the federal government, a banking holiday that

Franklin Roosevelt declared in 1933, and so on. (R058–R069.) Tucked into page

nine of the demand is the following sentence (and it really is just one sentence):

> In accordance with and pursuant to this agreement; a
> contractually (consensual) binding agreement between
> the parties to this Conditional Acceptance for Value and
> counter offer/claim for Proof of Claim to include the
> corporate Government Agency/Department construct(s)
> whom Respondent(s) represents/serves; as well as, ALL
> officers, agents, employees, assigns, and the like in
> service to Respondent(s) will not argue, controvert,
> oppose, or otherwise protest ANY future remedial
> proceeding(s)/action(s), including binding arbitration and
> confirmation of the award in the District Court of the
> United States at any competent court under original
> jurisdiction, in accordance with the general principles of
> non-statutory Arbitration, wherein this Conditional
> Acceptance for the Value/Agrement/Contract no. **2019-
> 5554-0712-1927**© constitutes an agreement of all
> interested parties in the event of a default and acceptance
> through silence/failure to respond when a request for
> summary disposition of any claims or particular issue
> may be requested and decided by the arbitrator, whereas
> a designated arbitrator shall be chosen at random, who is
> duly authorized, and in the event of any physical or
> mental incapacity to act as arbitrator, the Undersigned
> shall retain the authority to select any
> neutral(s)/arbitrator(s) that qualify pursuant to the
> common law right to arbitration, as the arbitration
> process is a private remedy decided upon between the
> parties, and with respects this agreement, the defaulting
> party waives any and all rights, services, notices, and
> consents to the undersigned or the undersigned's
> representative selection of the arbitrator thereby
> constituting agreement, and any controversy or claim
> arising out of or relating in any way to this Agreement or
> with regard to its formation, interpretation or breach, and

3

> any issues of substantive or procedural arbitrability shall
> be settled by arbitration, and the arbitrator may hear and
> decide the controversy upon evidence produced although
> a party who was duly notified of the arbitration
> proceeding did not appear; that the Undersigned deems
> necessary to enforce the "good faith" of ALL parties
> hereto within without respect to venue, jurisdiction, law,
> and forum the Undersigned deems appropriate.

(R066.) This language may be the closest the demand comes to an arbitration clause, though arbitration is also mentioned in other similarly opaque passages.

Mr. Wicker claims the demand included an arbitration clause, plus a warning that failure to respond by the deadline would constitute "acquiescence and tacit approval and agreement to the Offer and Agreement." (R010.) According to Mr. Wicker, Bayview and U.S. Bank did not respond, not even after Mr. Wicker twice followed up and "offer[ed] additional time." (R010.)

### B. "Arbitration"

Mr. Wicker claims he then sent a "Request for Arbitration Service" to HMP Arbitration Services in Bakersfield, California, after which an arbitrator named Robert Presley, also in Bakersfield, sent a "Notice of Hearing" to Bayview and U.S. Bank. (R010, R017, R020, R023.)

A California State Bar attorney search for Robert Presley turns up no results, as do California business entity searches for "Healing My People Arbitration Association" or "HMP Arbitration Association." (R127–R128.) HMP has a

website that invites users to register for an account, but the "Register" link doesn't work.  (R128.)  The link for sending money appears to work just fine.

Mr. Wicker's alleged "Request for Arbitration Service" and "Notice of Hearing" are similarly elusive.  He says these notices were sent to Bayview and U.S. Bank before the hearing, but he doesn't say when they were sent or what they said, and he doesn't include copies.  (R010–R012.)  His affidavit doesn't mention them.  (*See* R017–R018.)  He cites "Exhibit C" for evidence that he sent the notices (R012), but Exhibit C does not exist.  Perhaps he meant "Exhibit 3," which contains notarized "Certifications of Mailing" and "USPS Tracking" documents, but they all date from July 2019—a month after the hearing.  (*See* R070–R082.)

In short, the record contains no evidence that anyone notified Bayview or U.S. Bank about the hearing.  The arbitrator's award may suggest that no one did: it says the arbitrator "set [the matter] for arbitration after the receipt of the application and dispute resolution complaint on June 6, 2019."  (R025.)  If "receipt of the application" occurred on "June 6," then the arbitrator first learned of the arbitration demand on the day of the hearing, allowing no time to notify anyone.

According to Mr. Wicker, the hearing occurred in Bakersfield on June 6, but the details are hazy.  (ER017.)  Mr. Wicker doesn't say he was present at the hearing, and he doesn't say what happened there.  (*See* R017–R018.)  Whatever

happened, it didn't take long; the arbitrator's thirty-four page "amended" award says it was executed and mailed that same day.  (R020, R023, R053.)

The arbitrator's quick drafting might be explained by his lifting long passages, with haphazard alterations, from the arbitration agreement.  (*Compare, e.g.*, R029–R033 *with* R065–67 and R034–R038 *with* R067–R069.)   Or the arbitrator might not have lifted them:  he may have given Mr. Wicker the template for the agreement and then adapted the same template for his award, or perhaps Mr. Wicker wrote both documents.  In any case, it is not clear from the documents' language that they were drafted by two different people.

But one point is clear:  Bayview and U.S. Bank did not attend or in any way participate in the hearing.  (R012, R112.)   The supposed arbitrator issued a supposed award for $1,875,000, and Mr. Wicker mailed copies to Bayview and U.S. Bank in July.  (R046, R070–R082.)  For reasons not explicit in the record, Bayview and U.S. Bank did not move to vacate the award.

## II.   Procedural History

Mr. Wicker applied for confirmation of the award in October 2019.  (R004.) He argued that because Bayview and U.S. Bank had not moved to vacate the award he was entitled to confirmation under 9 U.S.C. § 9.  (R012–R014.)  He also moved for the marshals to serve process.  (R002, R092.)

Before Bayview and U.S. Bank opposed the application, the district court denied Mr. Wicker's motion for service and dismissed the case *sua sponte*. (R092–R095.) The court cited *Jones v. Bowers*, 737 F. App'x 846, 848 (10th Cir. 2018) (unpublished), for the proposition that *sua sponte* dismissal is appropriate when it is "patently obvious" that a plaintiff cannot prevail and that amending the complaint "would be futile." (R092.)

The district court observed that Mr. Wicker's alleged arbitration agreement was not executed by Bayview or U.S. Bank; "[r]ather, Mr. Wicker's theory is that this 'agreement' arose based on Respondents' *failure to respond* to it, as he clearly explains." (R093.) The court observed that this theory is "unknown to the law of contracts." (R094.) Because Bayview and U.S. Bank never signed the purported agreement, "the purported award is bogus," an "obvious sham." (R093–R094.) The court concluded, "[T]his action is therefore a farce." (R093.)

Mr. Wicker moved the court to reconsider, essentially repeating his argument: "The Arbitrator(s) determined there was an arbitration agreement and that the matters in dispute were arbitrable. . . . Bayview had three months to file an application or motion to Vacate . . . and failed to do so." (R100.)

Bayview opposed the motion (R126–R130), and the district court denied it (R132). Mr. Wicker appealed. (R133.)

## STANDARD OF REVIEW

"In assessing the district court's confirmation of the arbitration award," this Court "review[s] legal questions de novo and factual findings for clear error." *THI of New Mexico at Vida Encantada LLC v. Lovato*, 864 F.3d 1080, 1083 (10th Cir. 2017).  The Court presumably applies the same standard to district court orders denying confirmation of the award.

## SUMMARY OF THE ARGUMENT

So far as Mr. Wicker's evidence shows, he never sent Bayview or U.S. Bank an arbitration agreement, never warned them about the arbitration, and never attended any arbitration himself.  But the district court did not need to reach these issues.  It denied Mr. Wicker's application because, even by Mr. Wicker's account, Bayview and U.S. Bank never signed an arbitration agreement.  (R094.)

Mr. Wicker makes three arguments against this reasoning.  First, he argues that the district court could not consider any arguments whatsoever because Bayview and U.S. Bank did not file a timely motion to vacate the award.  Mr. Wicker is correct that Bayview and U.S. Bank did not move to vacate under 9 U.S.C. § 10, but that does not save him the trouble of meeting 9 U.S.C. § 9's requirements for judicial confirmation.  He must prove—and failed to prove—that the document he submitted for confirmation is "an award made pursuant to the arbitration," and that the parties contracted for judicial confirmation of the award.

Second, Mr. Wicker argues that the district court could not consider whether an arbitration agreement existed because the arbitrator had already decided that question.  He is mistaken; the Supreme Court has held that the formation of the alleged arbitration agreement is a question for the court, not for an arbitrator.

Third, Mr. Wicker briefly argues that Bayview and U.S. Bank's failure to respond to his arbitration agreement should be considered acceptance because Bayview and U.S. Bank had sent him a loan modification offer and had a duty to respond to his counteroffer. He cites no authority for this theory, which is contradicted by black-letter contract law.

Finally, Mr. Wicker also makes a procedural argument:  that the district court could not dismiss his case without first issuing an order to show cause. Under 9 U.S.C. § 6, however, Mr. Wicker's application was not a complaint but merely a motion, and nothing requires a court to issue an order to show cause before it denies a motion.  If the court had issued an order to show cause, nothing would have changed; in response Mr. Wicker would have made exactly the same arguments he made in his original motion and his motion to amend the judgment.

## ARGUMENT

### I.    Evidentiary Issues

Mr. Wicker's application was not a complaint, but a motion.  *See* 9 U.S.C. § 6.  That means he was not entitled to rely on allegations, as a plaintiff would do

on a 12(b)(6) motion, but needed to present admissible evidence. *See IFC Interconsult AG v. Safeguard Int'l Partners*, 438 F.3d 298, 308 (3d Cir. 2006) ("[T]he rules of notice pleading . . . are inapplicable to proceedings to vacate an arbitration award because relief must be sought in the form of a motion."); *see also* FED. R. EVID. 1101 (rules of evidence apply to proceedings before district courts; arbitration confirmation proceedings are not listed among exceptions); *O.R. Sec. Inc. v. Prof. Planning Assocs.*, 857 F.2d 742, 748 (11th Cir. 1988) (party moving to vacate an arbitration award had burden to produce evidence as part of motion).

Mr. Wicker understood this requirement and supported his application with an affidavit and various documents. (R017–R089.) However, his affidavit and documents do not support most of the facts he asserted in his petition.

First, Mr. Wicker claims he sent Bayview and U.S. Bank copies of the alleged agreement in April 2019 and followed up twice when they did not respond. (R010.) Mr. Wicker cites no evidence for these claims. (*See* R010.) His affidavit does not mention sending copies of the agreement to Bayview or U.S. Bank or following up afterward. (*See* R017–R018.)

Second, Mr. Wicker claims he filed a "Request for Arbitration" with HMP Arbitration Services. (R011.) Again he cites no evidence (*see* R011), and again his affidavit is silent on the issue (*see* R017–R018).

Third, as explained above in the statement of the case, Mr. Wicker introduced no evidence that anyone notified Bayview or U.S. Bank of the arbitration hearing before it occurred. (R010–R011; R011–R012.) He cites "Exhibit C" for this fact (R012), but there is no Exhibit C, and a complete review of his affidavit and exhibits shows no evidence that he sent Bayview or U.S. Bank any correspondence before the hearing (*see* R017–R089). All his proofs of mailing are dated July 2019, a month after the arbitrator signed the award. (R070–R082.)

Fourth, Mr. Wicker claims he sent "documents" to the arbitrator before the hearing, implying the documents were evidence for the arbitrator to consider. (R012.) His affidavit does not mention sending them, and there are no copies in his exhibits. (R017–R018; R019–89.)

Fifth, there is no admissible evidence that any hearing occurred. Mr. Wicker's affidavit says a hearing occurred (R017), but Mr. Wicker may testify that a hearing occurred "only if evidence is introduced sufficient to support a finding that [he] has personal knowledge of the matter." Fed. R. Evid. 602. Mr. Wicker introduced no such evidence. He does not say he attended the hearing. (*See* R017–R018.) It is likely he knows about the hearing only because the arbitrator told him about it, and that would be inadmissible hearsay.

In short, the only facts supported by admissible evidence are the following:

51938634;1

- The document at R058–R069 is a copy of the alleged arbitration agreement.  (R017.)

- The document at R020–R054 is a copy of the alleged award.  (R017.)

- Mr. Wicker mailed copies of the alleged award to Bayview and U.S. Bank in July 2017.  (R017; R069–R082.)

- Mr. Wicker did not receive a copy of any motion to vacate or modify the award.  (R018.)

**A. The award's factual statements are inadmissible.**

The alleged arbitration award says, without giving details, that Bayview and U.S. Bank had "the opportunity to submit . . . evidence."  (R025.)  It also says, again without details, that the arbitrator reviewed "documents and Proofs of Service."[3]  (R025.)  It says the arbitrator "set" the matter for hearing on June 6, though it does not actually say a hearing occurred.  (R025.)

Mr. Wicker may attempt to rely on these statements as evidence, but the award is not a sworn affidavit or a declaration under penalty of perjury.  (*See* R020–R054.)  If Mr. Wicker's affidavit is sufficient to authenticate the award, then he can use the authenticated document only as evidence of the content of the

---

[3]  The award says the documents and proofs of service are "permanently affixed to this record by reference," but if these documents exist, they were not included in Mr. Wicker's application.

arbitrator's decision.  He cannot use the award as evidence that the facts stated in the award are true—that would be hearsay.  FED. R. EVID. 801(c) ("Hearsay means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement."); FED. R. EVID. 802 (hearsay not admissible).

If Mr. Wicker wanted to use the arbitrator's testimony as evidence on these issues, he should have asked him to sign an affidavit or a declaration.  *See Arriaya-Flores v. Holder*, 497 F. App'x 859, 862 (10th Cir. 2012) (unpublished) (document summarizing witness's out-of-court statements would not be considered on appeal because it was not "subscribed by [the witness], as true under penalty of perjury" (quoting 28 U.S.C. § 1746)); *Howell v. N.M. Dep't of Aging & Long Term Services*, 398 F. App'x 355, 359 (10th Cir. 2010) (unpublished) (A witness statement "not in the form of an affidavit or an unsworn declaration . . . was not within the range of evidence that the district court could consider on summary judgment." (citation omitted)).

## II.     The District Court Did Not Have to Confirm a Bogus Award

The core of Mr. Wicker's argument is that, while lack of an agreement may be grounds for vacating an arbitration award, Bayview and U.S. Bank waived that issue by not moving to vacate the award within three months.  (App. Br. 3–9, 17–22.)  He also argues that the district court could not question the existence of an

arbitration agreement because the arbitrator decided that issue, and Bayview and U.S. Bank really did accept the agreement by failing to respond.  (App. Br. 13–16.)

### A. Mr. Wicker has not satisfied 9 U.S.C. § 9's requirements.

Mr. Wicker is correct that Bayview and U.S. Bank did not move within three months to vacate the award under 9 U.S.C. § 10.  But he is still not entitled to judicial confirmation under 9 U.S.C. § 9 unless he satisfies § 9's requirements.

9 U.S.C. § 9 allows confirmation only if the parties "have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration."  If the parties made such an agreement, then "any party to the arbitration may apply to the court . . . for an order confirming the award." *Id.*

For the present case, the key word in § 9 is "arbitration."  The statute provides for confirmation only of an "award made *pursuant to the arbitration*."  9 U.S.C. § 9 (emphasis added).  It allows applications only if they are made by a "party *to the arbitration*."  9 U.S.C. § 9 (emphasis added).  If no arbitration occurred, then there is no "party to the arbitration" who can apply for confirmation, and there is no "award made pursuant to the arbitration" for a court to confirm.

For example, if a party moved under § 9 to confirm a state-court judgment, its motion would be denied—a state-court judgment is not an "award made pursuant to . . . arbitration." *Id.*  If a party woke up one morning and scribbled "arbitration award: $100,000" on a cereal box, that "award" likewise could not be

14

confirmed.  *See Stebbins v. Google Inc.*, No. 11-cv-03876, 2011 WL 5150879, at
*1, *4 (N.D. Cal. Oct. 27, 2011) (unpublished) (party sent Google an arbitration
agreement saying failure to respond constituted acceptance; Google did not
respond; confirmation was denied because "there was no *actual* arbitration").

No arbitration occurred in this case.  As a legal matter, no arbitration can
possibly have occurred because there was no arbitration agreement, and as a
factual matter, there is no evidence that any arbitration ever occurred.

> *1.    There can be no arbitration without an agreement.*

The FAA does not define "arbitration," but the dictionary definition is "[a]
dispute-resolution process in which the disputing parties choose one or more
neutral third parties to make a final and binding decision."   Black's Law
Dictionary, "Arbitration" (11th ed. 2019).   "[A]rbitration is a matter of contract
and a party cannot be required to submit to arbitration any dispute which he has not
agreed so to submit."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363
U.S. 574, 582, (1960).   "Arbitration is strictly a matter of consent."  *Granite Rock
Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).

These definitions of "arbitration" are not satisfied.  There is no evidence "the
disputing parties ch[o]se" any third party to hear a dispute.  Black's, "Arbitration."
There is no evidence of any "contract" between Mr. Wicker and the appellees, and
no evidence the appellees ever "agreed . . . to submit" the dispute to arbitration.

51938634;1

*United Steelworkers*, 363 U.S. at 582.  There is no evidence that Bayview or U.S. Bank "consent[ed]" to arbitration, *Granite Rock Co.*, 561 U.S. at 299.

Because there was no agreement, whatever happened in this case cannot possibly have been arbitration.

> 2.    *No arbitration occurred.*

Even if there had been an agreement, there was still no arbitration.  As Bayview and U.S. Bank argued in Part I above, there is no evidence that Bayview or U.S. Bank received the supposed agreement or had any notice of the arbitration hearing until after the hearing allegedly occurred.  There is also no evidence that the arbitration hearing actually occurred, or that Mr. Presley, the alleged arbitrator, heard any evidence or argument before issuing his purported award.

The award itself, though not admissible on these points, says the arbitrator received Mr. Wicker's arbitration demand on June 6, then set a hearing for June 6, and then signed and mailed a thirty-four-page "amended" award, also on June 6.  (*See* Statement of the Case, Part I.A, *supra*; Argument, Part I, *supra*.)  But it doesn't say the June 6 hearing actually happened.  (*See* Argument, Part I, *supra*.)

This odd timeline, plus the multiple pages of almost-identical text shared between the award and the putative agreement, suggests there never was a decision by a third-party neutral but rather a conspiracy between Mr. Wicker and Mr. Presley to create a sham award and get it confirmed.  That the award was a "sham"

51938634;1

is an express finding of the district court (R094), and its finding cannot be disturbed absent clear error. *THI of New Mexico at Vida Encantada LLC v. Lovato*, 864 F.3d 1080, 1083 (10th Cir. 2017).

For Mr. Presley and HMP Arbitration Association, it would not be the first such sham. *See, e.g.*, *Orman v. Cent. Loan Admin. & Reporting*, No. CV-19-04756, 2019 WL 6841741, at *2 (D. Ariz. Dec. 16, 2019) (unpublished); *Swanson v. Wilford, Geske & Cook*, No. 19-cv-117, 2019 WL 4575826, at *3, *4 (D. Minn. Aug. 30, 2019) (unpublished).

Without an actual arbitration, there is no "award made pursuant to the arbitration," so Mr. Wicker is not entitled to confirmation. 9 U.S.C. § 9.

   3.   *The FAA does not provide for arbitration by default.*

Mr. Wicker may respond that no arbitration was necessary. Bayview and U.S. Bank refused to appear, so the arbitrator entered an award by default.

The problem with this argument is the arbitrator had no authority to enter an award by default. If a party wrongfully refuses to arbitrate, the FAA provides a remedy: a petition under 9 U.S.C. § 4 for an order to compel arbitration. If the party denies it agreed to arbitrate, it is entitled to dispute the issue in court. 9 U.S.C. § 4. The FAA does not provide for parties to skip the order to compel, obtain an award without actual arbitration, and then apply for confirmation.

There are cases in which default awards can be confirmed even if a party did not move for an order to compel arbitration. *E.g.*, *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 579 (8th Cir. 1998); *Northeast Reg'l Council of Carpenters v. KRS Constr. Grp. LLC*, No. 15-0047 (FLW)(LHG), 2015 WL 4773367, at *6 (D.N.J. Aug. 13, 2015) (collecting cases). But these cases have three points in common. First, in each case the defendant entered an arbitration agreement allowing for arbitration in its absence if it did not participate. *See, e.g.*, *Val-U Constr. Co.*, 146 F.3d at 575, 579; *Toyota of Berkeley v. Auto. Salesman's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987) ("Under a collective bargaining agreement specifically providing for designation of an arbitrator without the participation of both parties, an arbitrator may issue an enforceable default award when one party fails to attend the hearing.").

Second, in each case the defendant had notice of the arbitration before it occurred. *E.g.*, *Val-U Constr. Co.*, 146 F.3d at 575, 579; *Toyota of Berkeley*, 834 F.2d at 754 ("If . . . the defaulting party has adequate notice of the hearing, the failure to attend does not nullify the award."); *Local 149, Boot & Shoe Workers Union, AFL-CIO v. Faith Shoe Co.*, 201 F. Supp. 234, 236 (M.D. Pa. 1962) ("The defendant, having been notified of the time and place of the [arbitration] hearing, waived its right to be present and to be heard.").

And third, in each case an actual arbitration occurred despite the defendant's failure to appear.  *E.g.*, *Val-U Constr. Co.*, 146 F.3d at 579 ("***[B]ased on the evidence offered***, the arbitrator entered a final award." (emphasis added)); *Stebbins v. Google Inc.*, No. 11-cv-03876, 2011 WL 5150879, at *4 (N.D. Cal. Oct. 27, 2011) (unpublished) (reviewing applicant's authorities "involv[ing] judicial enforcement of default judgments entered in arbitration agreements" and concluding that, with one irrelevant exception, they all "considered whether to enforce awards made pursuant to *actual* arbitrations").

None of these three conditions is satisfied.  Bayview and U.S. Bank signed no agreement allowing an arbitrator to arbitrate without their participation, they had no notice of any arbitration, and no arbitration actually occurred.

**B. The parties did not agree to confirmation.**

9 U.S.C. § 9 puts a further restriction on confirmation:  confirmation is allowed only "[i]f the parties in their agreement have agreed" to it.  To allow courts to determine whether the parties agreed to confirmation, 9 U.S.C. § 13 requires applicants to file their arbitration agreements with their confirmation applications.

Mr. Wicker did not comply.  He filed a document he calls an agreement, but it cannot be an arbitration agreement because it is not executed by Bayview or U.S. Bank.  (R058–R069.)  His application can be denied because he failed to comply with § 13 and also because he presented no evidence that Bayview and U.S. Bank

ever agreed "that a judgment of the court shall be entered upon the award made pursuant to the arbitration."  9 U.S.C. § 9.

In *Meekins v. Lakeview Loan Servicing LLC*, a pro se party filed a motion to confirm and a purported agreement that was entitled, like Mr. Wicker's, "Show of Cause Proof of Claim Demand."  No. 3:19-cv-501-DJN, 2019 WL 7340300, at *2 (E.D. Va. Dec. 30, 2019) (unpublished).  (R058 (Wicker's agreement).)  Like Mr. Wicker's purported agreement, the *Meekins* agreement was not signed by the defendants.  *Id.*  The *Meekins* court denied confirmation because the applicant "ha[d] not presented a valid agreement whereby the parties agreed to arbitrate a dispute."  *Id.*  Neither has Mr. Wicker.

### C. The district court could consider whether there was an agreement.

Mr. Wicker argues that, because the arbitrator "determined there was a valid Arbitration Agreement," the district court could not reach that question but had to accept the arbitrator's decision.  (App. Br. 16.)  He writes, "The Court has usurped the arbitrator's primary role in interpreting the Agreement when the Court stated there was no contract (Agreement) to arbitrate."  (App. Br. 16.)  Mr. Wicker cites no authority that a court must accept an arbitrator's decision that a contract exists.

Authority does exist allowing arbitrators to decide "threshold issues."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  Threshold issues include whether a contract includes an arbitration clause, whether the clause is enforceable,

and whether a particular dispute falls within the clause's scope. *Id.* at 68–70. Threshold issues are not automatically assigned to the arbitrator, however; a court must find "clear and unmistakable evidence" that the parties agreed to assign the particular threshold issue to the arbitrator. *Id.* at 69 n.1; *see also First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) ("[B]ecause the [parties] did not clearly agree to submit the question of arbitrability to arbitration, . . . the arbitrability of the . . . dispute was subject to independent review by the courts.").

This authority about "threshold questions" does not apply to the question of "whether any agreement between the parties was ever concluded." *Id.* at 70 n.2. Instead the Supreme Court holds, "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Its precedent "distinguish[es] treatment of the generally nonarbitral question [of] whether an arbitration agreement was 'ever concluded' from the question [of] whether a contract containing an arbitration clause was illegal when formed, which question [the Supreme Court] held to be arbitrable in certain circumstances." *Id.* at 297–97.

At least six circuits have said that, under *Granite Rock*, courts must independently decide whether an arbitration agreement was formed rather than assigning that question to the arbitrator. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016) (courts must independently

review contract formation because "arbitration is strictly a matter of consent");

*Dist. No. 1 v. Marine Engineers' Beneficial Ass'n*, 815 F.3d 834, 844 (D.C. Cir.

2016); *Town & Country Salida Inc. v. Dealer Comp. Servs.*, 521 F. App'x 470, 474

(6th Cir. 2013) (unpublished) ("When an arbitrator finds consent to arbitration

based on the arbitrator's findings of facts or interpretation of a contract, these

findings and interpretations are not accorded deference when a party challenges the

arbitrator's authority."); *SBRMCOA LLC v. Bayside Resort Inc.*, 707 F.3d 267, 271

(3d Cir. 2013) ("[C]hallenges to the *formation* of a contract are generally for courts

to decide."); *Solymar Invs. Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989–90

(11th Cir. 2012) ("[I]ssues concerning contract formation are generally reserved for

the courts . . . . [S]uch a determination is the threshold question in any dispute

involving arbitration."); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th

Cir. 2010) ("*Granite Rock* . . . eliminated all doubt" as to "who is responsible for

deciding whether the parties formed a contract at all"; "where the dispute at issue

concerns contract formation, the dispute is generally for courts to decide.").

This Court appears not to have applied *Granite Rock* to this issue, but before

*Granite Rock* it reached the same conclusion.  It held in *Spahr v. Secco* that when a

party argued that it lacked mental capacity to form an arbitration agreement, the

mental capacity argument should be decided by a court and not by the arbitrator.

330 F.3d 1266, 1273 (10th Cir. 2003).  The Supreme Court later cited *Spahr* as

22

holding that courts, not arbitrators, must determine whether an agreement was ever formed.  *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006); *In re Cox Enters. Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1210–11 (10th Cir. 2016) ("*Buckeye* treated *Spahr* as addressing not whether an agreement was enforceable, but whether any agreement . . . was ever concluded.").

The Eleventh Circuit, also before *Granite Rock*, applied similar reasoning to a case like this one, where a party claimed it had never signed an agreement. *Chastain v. Robinson-Humphrey Co.*, 857 F.2d 851, 853 (11th Cir. 1992), *overruled on other grounds by Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 n.1 (11th Cir. 2017).  The Eleventh Circuit refused to "require arbitrators to adjudicate a party's contention . . . that a contract *never existed at all*."  *Id.* at 855.  It held that the existence of a contract was a question for the court.  *Id.* at 856.

**D. There was no agreement.**

Mr. Wicker argues, "Bayview was obligated to respond to the Counter-Offer/Agreement which was the response to Bayview's/USB offer to modify the Mortgage Loan allegedly 'held' by Bayview for USB."  (App. Br. 15.)  He cites no authority supporting this argument, and as Part I argued above, there is no evidence in the record that he ever sent the "Counter-Offer/Agreement" or the alleged "Default Notices."  (App. Br. 15.)

Assuming for the sake of argument that Mr. Wicker's facts are correct, Bayview and U.S. Bank had no obligation to respond and could not bind themselves to a contract by mere silence.   When Mr. Wicker allegedly sent a "Counter-Offer" in response to Bayview's alleged loan modification offer, his counteroffer constituted a rejection of Bayview's offer.   *Cal Wadsworth Const. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995) ("An acceptance must unconditionally assent to all material terms presented in the offer . . . or it is a rejection of the offer."); *Verdi Energy Grp. v. Nelson*, 2014 UT App 101, ¶ 14 ("[O]ffering different terms . . . amounts to a rejection of the contract.").

Then, when Bayview and U.S. Bank did not respond to the alleged "Counter-Offer," their lack of response constituted a rejection.   *Verdi Energy*, 2014 UT App 101, ¶ 14 ("[F]ailing to respond at all . . . amounts to a rejection of the contract."); *see also Cal Wadsworth Const.*, 898 P.2d at 1376 ("An acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made."). Bayview and U.S. Bank never agreed to be bound by the supposed agreement.

**E. Mr. Wicker's precedents do not apply.**

Mr. Wicker takes the position that a court cannot consider any of the foregoing matters—the arbitrator has decided everything, and courts may not question his decisions.   Even the narrow grounds for vacating an award (partiality,

24

fraud, etc.) do not apply, he argues, because Bayview and U.S. Bank did not serve a timely motion to vacate the award.  (App. Br. 12.)  His precedents supporting this position do not undermine the district court's ruling.

### 1.    Supreme Court authority

Mr. Wicker cites four Supreme Court cases, none of them on point.  First, in *Henry Schein Inc. v. Archer and White Sales Inc.*, the Supreme Court considered the effect of an arbitration agreement that provided for the arbitrator to decide whether any particular dispute could be arbitrated.  139 Sup. Ct. 524, 527–28 (2019).  The district and circuit courts had refused to compel arbitration because, under the agreement's terms, the parties' dispute was clearly outside the scope of the arbitration clause and the arbitration demand was "wholly groundless."  *Id.* at 528.  The Supreme Court reversed, rejecting the "wholly groundless" exception to the FAA—if the parties contracted that an arbitrator would decide the question of arbitrability, then the courts had to respect that decision.  *Id.* at 528, 529, 531.

*Henry Schein* is irrelevant:  neither the district court's order nor this brief disputes the scope of an arbitration clause, reaches the underlying merits of Mr. Wicker's claim, or relies on any "wholly groundless" exception.

Second, in *United Paperworkers Int'l Union v. Misco Inc.*, a company moved to vacate an arbitrator's award.  484 U.S. 29, 34 (1987).  Its motion was granted, and the Fifth Circuit affirmed because it concluded the arbitrator had

25

ignored key facts.  *Id.* at 35.  The Supreme Court reversed, ruling, "No dishonesty is alleged; only improvident, even silly, factfinding is claimed. This is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."  *Id.* at 39.

*Misco* is also irrelevant.  *Misco* concerned the possible grounds for vacating an award, but here vacatur is not at issue—the question is whether Mr. Wicker has met the requirements for confirmation under § 9.  Unlike in *Misco*, the district court here did not question the arbitrator's award on the merits; it ruled that there was no arbitration agreement and the award was a "sham."  (R094.)  And unlike in *Misco*, where the Court pointed out that "[n]o dishonesty is alleged," in this case dishonesty is not only alleged but patent on the face of the application.

Third, Mr. Wicker cites *Hall Street Associates L.L.C. v. Mattel Inc.*, 552 U.S. 576, 587 (2008), for the proposition that 9 U.S.C. § 9 "unequivocally tells courts to grant confirmation in all cases, except when one of the prescribed exceptions applies."  (App. Br. 10.)  The Supreme Court made this observation while assessing whether the FAA allowed parties, by contract, to broaden the grounds on which judicial review of the arbitrator's decision would be available. *Hall Street*, 552 U.S. at 578.  It plainly assumed that the parties had agreed to arbitration and that an actual arbitration award had been presented for

confirmation.  *See id.* at 579–80.  It plainly did not intend to abolish 9 U.S.C. § 9's requirement that the parties agree to confirmation, which was not at issue.

Fourth, *First Options of Chicago v. Kaplan* holds that questions of arbitrability should be decided by a court unless both parties "clearly agree[d] to submit the question of arbitrability to arbitration."  514 U.S. 938, 947 (1995).  As explained in Argument Part II.C above, this holding does not apply when a party disputes that any contract was ever formed.  Even if it did apply, it supports Bayview and U.S. Bank's position because Bayview and U.S. Bank did not clearly agree to let an arbitrator decide the validity of the agreement.

### 2.    *Tenth Circuit authority*

Mr. Wicker also cites three Tenth Circuit arbitration cases (App. Br. 4), but they do not support his position, either.  In *Denver & Rio Grande Western v. Union Pacific*, a party argued an award should be vacated as contrary to public policy. 119 F.3d 847, 849–50 (10th Cir. 1997).  The Tenth Circuit held that the alleged public policy was not implicated.  *Id.* at 850.  Along the way, it made the commonplace observation that an award may not be vacated for "[e]rrors in either the arbitrator's factual findings or his interpretation of the law."  *Id.* at 849.

In *Brown v. Coleman Co.*, the Tenth Circuit reversed a district court's partial vacatur of an arbitration award, ruling that the award was within the arbitrators' authority under the contract.  220 F.3d 1180, 1182–84 (10th Cir. 2000).  The

*Brown* court observed that "the standard of review of arbitral awards is among the narrowest known to law." *Id.* at 1182.

In *Sterling Colorado Beef Co. v. United Food and Commercial Workers*, the Tenth Circuit likewise held that an award should be confirmed: "The arbitral award draws its essence from the contract and cannot be overturned." 767 F.2d 718, 721 (10th Cir. 1985).

Each of these cases assumed the parties had entered an arbitration agreement and an actual arbitration had occurred. None of them considered the issue in this case: what happens when there is no arbitration agreement and no arbitration.

>    3.    *Persuasive authority*

Mr. Wicker also cites a handful of persuasive authorities. He intends a few to support his argument that Bayview and U.S. Bank waived the right to contest the existence of an agreement by failing to raise that issue before the arbitration. (App. Br. 7.) The cases he cites on this point are all state-court cases applying the Uniform Arbitration Act, not the FAA. *See Hwang v. Tyler*, 625 N.D.2d 243, 244 (Ill. Ct. App. 1993); *Borg Inc. v. Morris Middle Sch. Dist.*, 278 N.E.2d 818, 820 (1972) (Ill. Ct. App. 1972); *Spaw-Glass Const. Serv. v. Vista De Santa Fe Inc.*, 844 P.2d 807, 808 (N.M. 1992). Specifically, they all apply the Uniform Arbitration Act's § 12(a)(5), which allows vacatur if "[t]here was no arbitration agreement and

the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection."

Section 12(a)(5) and the cases applying it do not apply here because Mr. Wicker filed his petition under the FAA (R004), which contains no analogous provision. *See* 9 U.S.C. § 9 (FAA section listing grounds for vacating award). Of course, if the Uniform Arbitration Act did apply, it would allow Bayview and U.S. Bank to argue they signed no agreement because "the issue was not adversely determined" in proceedings on a motion to compel and because Bayview and U.S. Bank "did not participate in the arbitration hearing without raising the objection."

Mr. Wicker's remaining citations regarding arbitration are similar to his Tenth Circuit citations above. They contain standard language about district courts not second-guessing arbitrators on the merits. (*See* App. Br. 8, 14, 15, 17, 19, 20.) None of them undermines the district court's reasons for denying Mr. Wicker's application in this case.

## III.    The District Court Could Rule without an Order to Show Cause

Mr. Wicker argues the District Court erred by dismissing the case *sua sponte* without first issuing an order to show cause why the case should not be dismissed. (App. Br. 9–13.)  His only authority on this point is 28 C.F.R. § 68.10 (App. Br.

11),[4] but that provision applies to administrative law judges hearing immigrant employment cases.  It does not apply here.

As Mr. Wicker points out (App. Br. 10), his application was not technically a complaint but merely a motion:  "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.  In other words, the district court didn't really dismiss a complaint *sua sponte*; it just denied a motion without waiting for an opposition or a reply.  Mr. Wicker's motion was his opportunity to be heard, and if there are any arguments he failed to include in his motion, he has no one but himself to blame.

**A. Mr. Wicker was not prejudiced.**

Mr. Wicker argues he was prejudiced by the lack of an order to show cause because, given the chance, he could have raised issues of "*estoppel* and *res judicata*." (App. Br. 10.)  When he explains what he means by "estoppel and res judicata," it is clear he means the same argument he raised in his initial application and the subsequent motion to amend the judgment, specifically that the award must be confirmed because "[t]here has been no Order to Vacate, Modify or Correct the Arbitration Award." (App. Br. 10–11.)

---

[4] His brief says "8 CFR §68.10," but that section does not exist, and the text he quotes comes from 28 C.F.R. § 68.10.

In other words, the lack of an order to show cause had no effect at all. Mr. Wicker would have made the same arguments he made in his initial application and his subsequent Rule 59 motion, and the district court would have rejected them for the same reasons it laid out in its dismissal order.

## IV. CONCLUSION

Imagine Mr. Wicker sending the following letter to the general counsel of every company in the Fortune 500:

> To [insert company name]:
>
> Please find attached an arbitration award, which I drafted and paid my neighbor $5 to sign. It informs you that, at a hearing last week that no one actually attended, my neighbor (hereinafter "the arbitrator") determined that you and I had entered an arbitration agreement and that my claim against you was subject to arbitration.
>
> Based on your breaches of the attached arbitration agreement, which you never signed, the arbitrator has found you liable in the amount of $1,000,000,000,000.00.
>
> Please pay within 90 days or I will seek judicial confirmation.

Out of the 500 recipients, some would no doubt ignore the letter. Mr. Wicker could wait three months and then start filing applications to confirm.

That case is this case. The two are distinguishable only by the height of Mr. Wicker's audacity, and if Mr. Wicker's arguments are correct, then a court would have no basis for refusing confirmation of the hypothetical trillion-dollar awards.[5]

No arbitration agreement? Mr. Wicker says the court can't reach that issue; the arbitrator decided it.

The arbitrator was partial? The award was procured by fraud? According to Mr. Wicker, the court can't reach those issues, either; the company waived them when it missed the deadline for moving to vacate the award.

Mr. Wicker's arguments are not correct. Even if a defendant does not move to vacate an award, a plaintiff seeking confirmation still needs to prove there was an "award made pursuant to the arbitration" before the award can be confirmed under 9 U.S.C. § 9—that is, he must prove that the defendant agreed to arbitrate, that arbitration actually occurred, and that the agreement provides for judicial confirmation. Even if the plaintiff's award says the parties formed an arbitration agreement, a defendant is still entitled to dispute that issue, and a court must still decide it before it can enforce the agreement or any resulting award.

The essence of arbitration is contract. Here there is no contract, no arbitration, and no arbitration award. The judgment should be affirmed.

---

[5] And if the Court rules Mr. Wicker's arguments are in fact correct, then the trillion-dollar awards are unlikely to remain hypothetical.

DATED this 12th day of March, 2020.

/s/ Alan M. Hurst
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
(801) 907-6900
robert.scott@akerman.com
alan.hurst@akerman.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2020, I electronically filed the

foregoing **APPELLEES' RESPONSE BRIEF** using the Court's CM/ECF system

and sent 7 copies of the brief to the Clerk of the Court by Federal Express and two

copies to Appellant via U.S. Mail:

*Via U.S. Mail Only*

James B. Wicker
2564 South 4390 West
Hurricane, Utah 84737
Email:  jwicker@hotmail.com
*Pro Se Plaintiff-Appellant*


/s/ Alan M. Hurst
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview
Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
robert.scott@akerman.com
alan.hurst@akerman.com

51938634;1

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limitation of Fed. R. App. P. 32(a)(7) because the brief contains 7,376 words as calculated by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in proportionally spaced 14-point Times New Roman font in 2016 Microsoft Word.

DATED this 12th day of March, 2020.

/s/ Alan M. Hurst
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
(801) 907-6900
robert.scott@akerman.com
alan.hurst@akerman.com

51938634;1

## CERTIFICATE OF DIGITAL SUBMISSION AND
## PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **APPELLEES'
RESPONSE BRIEF** was submitted in Digital Form via the Court's ECF system, is
an exact copy of the written document filed with the Clerk and has been scanned
for viruses with Cylance PROTECT, version 2.0.1494.39, and according to the
program, is free of viruses.  In addition, I certify all required privacy redactions
have been made.

I certify that the information on this form is true and correct to the best of
my knowledge and belief formed after a reasonable inquiry.

DATED this 12th day of March, 2020.

*/s/ Alan M. Hurst*
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview
Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
(801) 907-6900
robert.scott@akerman.com
alan.hurst@akerman.com

51938634;1

**EXHIBITS**

**Rulings in Case No. 4:19-cv-00088-DN**

Exhibit 1    Order Denying Motion for Service of Process And Granting    SUA Sponte Motion To Dismiss Action For Failure To State A Claim 11-23-2019

Exhibit 2    Judgment in A Civil Case 11-23-2019

Exhibit 3    Order Denying Motion for Reconsideration 12-05-2019

37

**EXHIBIT 1**

**Order Denying Motion for Service of Process And Granting SUA Sponte Motion To Dismiss Action For Failure To State A Claim**

51938634;1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE THE MATTER OF: | **ORDER DENYING MOTION FOR SERVICE OF PROCESS AND GRANTING SUA SPONTE MOTION TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM** |
| ARBITRATION AWARD OF ROBERT PRESLEY OF HMP ARBITRATION SERVICES, DATED JUNE 6, 2019, JAMES B. WICKER, Applicant | |
| Petitioner, | Case No. 4:19-cv-00088-DN-PK |
| v. | District Judge David Nuffer |
| BAYVIEW LOAN SERVICES; U.S. BANK, | Magistrate Judge Paul Kohler |
| Respondents. | |

"Applicant" James B. Wicker has filed a motion seeking "an Order for the U.S. Marshal Service to make service of Notice of the Application for Confirmation of the Arbitration Award" ("Motion").[1] The Motion is DENIED and this action is DISMISSED WITH PREJUDICE.

A district court may grant a sua sponte motion to dismiss an action with prejudice for failure to state a claim "when it is patently obvious that the plaintiff" (or, here, petitioner or applicant) "could not prevail on the facts alleged and allowing . . . an opportunity to amend [the] complaint" (or, here, petition or application) "would be futile."[2] That standard is satisfied here.

Mr. Wicker commenced this proceeding by filing a document entitled Special Action for Confirmation of Arbitration Award ("Application").[3] He asks the court to confirm an arbitration award of $1,875,250.00 entered in his favor and against Respondents Bayview Loan Servicing,

---

[1] Docket no. 3 at 1, filed October 29, 2019.

[2] *Jones v. Bowers*, 737 Fed. Appx. 846, 848 (10th Cir. 2018) (citation and quotation marks omitted).

[3] Docket no. 1, filed October 24, 2019.

LLC ("Bayview") and US Bank, NA ("USB"). However, the face of the Application itself, which incorporates the attached exhibits referenced therein, make clear that the purported award is bogus because there was never an agreement to arbitrate, and that this action is therefore a farce.

The Application states that it is based on "attached copies of the relevant arbitration agreement (Exhibit 2 attached hereto and made fully a part thereof), and the Award (Exhibit 1) issued by the Arbitrator in the subject arbitration."[4] The supposed "arbitration agreement" referenced is in fact no such thing. Exhibit 2 is a document entitled "Conditional Acceptance for the Value/Agreement/Counter Offer to Acceptance of Offer."[5] It is addressed to Respondents (and the Department of Agriculture) from Mr. Wicker, and states in part as follows:

> To the Holder in Due Course and/or agent and/or representative
>
> I James B. Wicker have received your offer and accept your offer under the following terms and conditions-
>
> That you provide the following proof of claim, *your failure to provide proof of claim, and to accept payment for credit on account shall constitute a breach of this binding self-executing irrevocable contractual agreement* coupled with interest and subject the breaching party to fines, penalties, fees, taxes and other assessments.[6]

Strikingly absent from this "binding self-executing irrevocable contractual agreement" is any signature from either of the Respondents.[7] Rather, Mr. Wicker's theory is that this "agreement" arose based on Respondents' *failure to respond* to it, as he clearly explains in the attached Memorandum in Support of Application for Confirmation:[8]

---

[4] *Id*. at 3.

[5] Docket no. 1-5, filed October 24, 2019.

[6] *Id*. at 1.

[7] *Id*. at 13 (including only a signature line for James B. Wicker).

[8] Docket no. 1-1, filed October 24, 2019.

On April 5th 2019 Applicant Wicker sent a Conditional Acceptance for the Value/Agreement/Counter Offer to Acceptance of Offer to Bayview and USB. *This offer and agreement required a response* within a time period that was to be automatically extended upon request. This agreement contained an arbitration clause. *Failure to respond was identified in the document as acquiescence and tacit approval and agreement to the Offer and Agreement.* Both Bayview and USB failed to respond. A Notice was sent to Bayview and USB on April 29, 2019 offering additional time to respond. Both Bayview and USB failed to respond. A Notice of Default was sent to Bayview and USB on May 11, 2019 giving additional three days for a respond [sic]. Both Bayview and USB again failed to respond. A copy of the Request for Arbitration Service to HMP Arbitration Services was sent to Bayview and US Bank, NA.[9]

Because "arbitration is a matter of contract,"[10] and because the theory underlying the arbitration agreement put forward by Mr. Wicker here is unknown to the law of contracts,[11] the purported award is an obvious sham and there can be no valid action based thereon.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Motion[12] is DENIED and this action is DISMISSED WITH PREJUDICE.

Signed November 13, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[9] *Id*. at 2.

[10] *Countrywide Home Loans, Inc. v. Arbitration All. Int'l, LLC*, No. 204CV152 TS, 2004 WL 987131, at *6 (D. Utah Apr. 14, 2004).

[11] *Id*. (explaining that an arbitration agreement does not arise unless "*both* parties . . . expressly agree—not by waiver, estoppel, or any other collateral means") (emphasis in original).

[12] Docket no. 3 at 1, filed October 29, 2019.

**EXHIBIT 2**

**Judgment in A Civil Case**

AO 450 (Rev.5/85) Judgment in a Civil Case

# United States District Court

### District of Utah

**James B. Wicker**

Petitioner

v.

**Bayview Loan Services, et al.**

Respondent

### JUDGMENT IN A CIVIL CASE

Case Number: 4:19cv00088 DN-PK

IT IS ORDERED AND ADJUDGED

That this action is dismissed with prejudice for failure to state a claim.

November 13, 2019

*Date*

D. Mark Jones

*Clerk of Court*

*(By) Deputy Clerk*

# EXHIBIT 3

## Order Denying Motion for Reconsideration

51938634;1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE THE MATTER OF:<br><br>ARBITRATION AWARD OF ROBERT PRESLEY OF HMP ARBITRATION SERVICES, DATED JUNE 6, 2019, JAMES B. WICKER, Applicant<br><br>                Petitioner,<br><br>v.<br><br>BAYVIEW LOAN SERVICES; U.S. BANK,<br><br>                Respondents. | **ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Case No. 4:19-cv-00088-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

"Applicant" James B. Wicker has filed a motion seeking reconsideration ("Motion")[1] of the order dismissing this action ("Order").[2] As previously explained in the Order, the face of Mr. Wicker's own petition[3] establishes the invalidity of the purported arbitration award he seeks to have confirmed in this action, and no authority he has cited alters this conclusion. For this reason,

IT IS HEREBY ORDERED that the Motion is DENIED.

Signed December 4, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[1] Motion for Reconsideration of Order Dated November 13, 2019, or in the Alternative, Notice of Void Judgment, docket no. 12, filed November 20, 2019.

[2] Order Denying Motion for Service of Process and Granting Sua Sponte Motion to Dismiss Action for Failure to State a Claim, docket no. 9, filed November 13, 2019.

[3] Special Action for Confirmation of Arbitration Award, docket no. 1, filed October 24, 2019.