**Appeal No. 19-4169**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

JAMES B. WICKER,

    *Plaintiff-Appellant*,

v.

BAYVIEW LOAN SERVICING, LLC and U.S. BANK, N.A.,

    *Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Utah, Central Division
Honorable David Nuffer, Case No.: 4:19-cv-00088-DN

**REPLY SUPPORTING MOTION FOR SANCTIONS**

> Robert H. Scott
> Alan M. Hurst
> AKERMAN LLP
> 170 South Main Street, Suite 725
> Salt Lake City, Utah 84101
> Telephone: (801) 907-6900
> Facsimile: (801) 355-0294
> Email: robert.scott@akerman.com
> Email: alan.hurst@akerman.com
>
> *Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*

52657610;1

Appellees Bayview Loan Servicing LLC and U.S. Bank N.A. respectfully reply supporting their motion for sanctions against appellant James Wicker.

## ARGUMENT

Mr. Wicker's opposition claims, "There is no evidence that Wicker is or has participated in any campaign of abusive litigation." (Opp. at 1.) He claims he has had "no contact" with Sybil Ehninger High, the notary who signed and stamped three of his certificates of mailing. (Opp. at 4.) He claims he has "no personal knowledge of Mr. Presley"—the supposed arbitrator—"other than having used and paid for services that were offered at the prescribed rate." (Opp. at 4.)

### I.     No Affidavit

Mr. Wicker's claims are interesting for what they leave out. First, they are not supported by an affidavit or a declaration under penalty of perjury. *Cf. Arriaya-Flores v. Holder*, 497 F. App'x 859, 862 (10th Cir. 2012) (unpublished) (out-of-court statements would not be considered on appeal because, among other reasons, they were not "subscribed . . . as true under penalty of perjury").

This omission is not just a formality. Mr. Wicker claims he had "no contact" with Ms. Ehninger High, but this contradicts the certificates of mailing in his application to confirm the award: his certificates say Ms. Ehninger High put documents in an envelope "at the request of James B. Wicker, a living man, for presentment on this 27th day of July, 2019." (R071, R077, R079.) Although

52657610;1

Bayview and U.S. Bank's motion cited these certificates (Mot. at 4), Mr. Wicker does not try to reconcile them with his claim that he had "no contact" with Ms. Ehninger High. He leaves the Court to choose between the evidence he presented to the district court and his self-serving unsworn statement now.

## II.  No Authority Supporting Theories about Contract Formation

Second, Mr. Wicker omits any explanation of how he came to believe that a contract can be formed when a party ignores a contract offer. Bayview and U.S. Bank's motion argued that this idea is so obviously contrary to law that it proves Mr. Wicker filed his appeal recklessly, without a reasonable inquiry into the merits. (Mot. at 6–7.) Mr. Wicker's only response is to double down: "The duty to respond to the Contract was clear within the contract itself . . . ." (Opp. at 3.) In other words, Mr. Wicker says Bayview and U.S. Bank were bound by a contract they didn't sign because the contract they didn't sign said they were bound. Mr. Wicker cites no authority for this circular argument.

Mr. Wicker also argues again that the court was bound by the arbitrator's ruling that the parties entered a contract. (Opp. at 3.) But while he attempts to distinguish Bayview and U.S. Bank's authority on this issue, Mr. Wicker does not cite any authority saying a court is ever bound by an arbitrator's ruling about contract formation. This omission, like the others, suggests Mr. Wicker has not done his duty to investigate the merits of his claims. *See* 10th Cir. R. 46.5.

### III. No Explanation of Relationship with Mr. Presley

Third, Mr. Wicker omits any explanation of how he came to believe that Mr. Presley and HMP Arbitration Association were legitimate arbitrators. Bayview and U.S. Bank's motion argued that Mr. Presley was engaged in a campaign of abusive litigation. (Mot. at 3–6.) The motion acknowledged there was no direct evidence that Mr. Wicker was aware of the campaign, beyond his apparent contact with Mr. Presley and Ms. Ehninger High. (Mot. 3–4, 6.) But it argued further that, if Mr. Presley communicated with Mr. Wicker using similar language to what he filed in court, then Mr. Wicker had ample reason to doubt Mr. Presley's bona fides and should have investigated him. (Mot. at 6–7.)

In response, Mr. Wicker says nothing about his communications with Mr. Presley, the two parties' course of dealings, or any investigation he conducted before retaining him; he says only that he "has no personal knowledge of Mr. Presley" and "knows nothing of an abusive litigation campaign." (Opp. 4.) These claims are not made under penalty of perjury, and they are suspect on their face: if Mr. Wicker did not know Mr. Presley or know about Mr. Presley's other cases, then how did he come to use Mr. Presley as an arbitrator? Mr. Wicker does not say.

Most of Mr. Presley's cases involve mortgage companies. (*See* Mot. at 5–6 (listing cases involving Central Loan Administration, Guild Mortgage Co., and Nationstar Mortgage Services).) This includes the *Ehninger High* case, in which

52657610;1

Mr. Wicker's notary had lost property to foreclosure and then obtained an award from Robert Presley against the judge who ordered her evicted. (Mot. ex. A at 1–2.) It is reasonable to surmise that Mr. Wicker, after losing his own efforts to stop foreclosure,[1] sought out similarly situated people online, learned what Mr. Presley was doing for them, and decided he wanted Mr. Presley to do the same for him.

In other words, it is reasonable to conclude—at least where Mr. Wicker has provided no contrary evidence—that Mr. Wicker knew exactly what he was getting himself into, or at least had good reason to find out.

## CONCLUSION

Mr. Wicker knowingly or recklessly participated in a campaign of abusive litigation against mortgage lenders. He knowingly or recklessly made frivolous arguments about contract formation. He is trying to take nearly $2 million from Bayview and U.S. Bank through means no reasonable person would call honest, through means the district court called a "sham" and a "farce." (R093, R094.) In the process he forced Bayview and U.S. Bank to incur significant attorney fees.

Under Rule 38 and local rule 46.5, Mr. Wicker should be required to pay those fees. Bayview and U.S. Bank's motion for sanctions should be granted.

---

[1] *See Bayview Loan Servicing LLC v. Wicker*, 163 A.3d 1039, 1041 (Pa. Super. Ct. 2017) (affirming foreclosure judgment against Wicker), *affirmed by Bayview Loan Servicing LLC*, 206 A.3d 474 (Pa. 2019).

52657610;1

DATED this 15th day of April, 2020.

/s/ *Alan M. Hurst*
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
(801) 907-6900
robert.scott@akerman.com
alan.hurst@akerman.com

52657610;1

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2020, I electronically filed the foregoing **REPLY SUPPORTING MOTION FOR SANCTIONS** using the Court's CM/ECF system and sent 3 copies of the brief to the Clerk of the Court by Federal Express and two copies to Appellant via U.S. Mail:

*Via U.S. Mail Only*

James B. Wicker
2564 South 4390 West
Hurricane, Utah 84737
Email:  jwicker@hotmail.com

*Pro Se Plaintiff-Appellant*

/s/ Alan M. Hurst
Robert H. Scott
Alan M. Hurst

*Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*

AKERMAN LLP
170 South Main Street, Suite 725
Salt Lake City, Utah 84101
robert.scott@akerman.com
alan.hurst@akerman.com

52657610;1

## CERTIFICATE OF COMPLIANCE

This motion complies with the length limitation of Fed. R. App. P. 27(d)(2) because the brief contains 1,255 words as calculated by Microsoft Word.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because the motion has been prepared in proportionally spaced 14-point Times New Roman font in 2016 Microsoft Word.

DATED this 15th day of April, 2020.

>*/s/ Alan M. Hurst*
>Robert H. Scott
>Alan M. Hurst
>
>*Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*
>
>AKERMAN LLP
>170 South Main Street, Suite 725
>Salt Lake City, Utah 84101
>(801) 907-6900
>robert.scott@akerman.com
>alan.hurst@akerman.com

52657610;1

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **REPLY SUPPORTING MOTION FOR SANCTIONS** was submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with Cylance PROTECT, version 2.0.1494.39, and according to the program, is free of viruses.  In addition, I certify all required privacy redactions have been made.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

DATED this 15th day of April, 2020.

> */s/ Alan M. Hurst*
> Robert H. Scott
> Alan M. Hurst
>
> *Counsel for Defendants-Appellees Bayview Loan Servicing, LLC and U.S. Bank, N.A.*
>
> AKERMAN LLP
> 170 South Main Street, Suite 725
> Salt Lake City, Utah 84101
> (801) 907-6900
> robert.scott@akerman.com
> alan.hurst@akerman.com

52657610;1